# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

LORNA CARTWRIGHT,
o/b/o A.C., a minor,

    *Plaintiff*,

v.                                            CASE NO. 10-CV-13954

COMMISSIONER OF                DISTRICT JUDGE STEPHEN J. MURPHY, III
SOCIAL SECURITY,                 MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff's minor child, A.C., is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

### II.    REPORT

#### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Commissioner's decision denying Plaintiff's claim for supplemental security income ("SSI") benefits for Plaintiff's minor child. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 9, 15, 16.)

Plaintiff's son, A.C.,[2] was 12 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 5 at 18, 21, 34, 125.) Plaintiff filed the instant claim on May 1, 2007, alleging that A.C.'s disability began at birth, i.e., on June 22, 1997. (Tr. at 125.) The claim was denied at the initial administrative stages. (Tr. at 78.) In denying the claims, the Defendant Commissioner considered Attention Deficit Hyperactivity Disorder ("ADHD") and Oppositional Defiant Disorder ("ODD") as possible bases of disability. (*Id.*) On January 21, 2010, Plaintiff appeared before Administrative Law Judge ("ALJ") William Reamon, who considered the application for benefits *de novo*. (Tr. at 15-33.) In a decision dated February 10, 2010, the ALJ found that A.C. was not disabled. (Tr. at 30.) Plaintiff requested a review of this decision on March 15, 2010. (Tr. at 11-14.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on August 25, 2010, when, after the review of additional exhibits[3] (Tr. at 195-224, 651-52), the Appeals Council denied Plaintiff's request for review. (Tr. at 1-6.) On October 4, 2010, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

---

[2] Rule 5.2(a)(3) of the Federal Rules of Civil Procedure prohibits the use of a minor's name and requires that only a minor's initials be used.

[3] In this circuit, when the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

**B.     Standard of Review**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with

observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir.

1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II, 42 U.S.C. § 401 *et seq.*, and the Supplemental Security Income Program ("SSI") of Title XVI, 42 U.S.C. § 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

5

A child will be considered disabled if he or she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations . . . ." 42 U.S.C. § 1382c(a)(3)(C)(i). To determine whether a child's impairment results in marked and severe limitations, Social Security Administration ("SSA") regulations[4] prescribe a three step sequential evaluation process:

1. If a child is doing substantial gainful activity, the child is not disabled and the claim will not be reviewed further.

2. If a child is not doing substantial gainful activity, the child's physical or mental impairments will be considered to see if an impairment or combination of impairments is severe. If the child's impairments are not severe, the child is not disabled and the claim will not be reviewed further.

3. If the child's impairments are severe, the child's impairment(s) will be reviewed to determine if they meet, medically equal or functionally equal the listings. If the child has such an impairment and it meets the duration requirement, the child will be considered disabled. If the child does not have such impairment(s), or if the duration requirement is not met, the child is not disabled.

20 C.F.R. § 416.924(a). In the third step – namely, whether a child's impairment(s) functionally equals the listings – the Commissioner assesses the functional limitations caused by the child's impairment(s). 20 C.F.R. § 416.926a(a). The Social Security regulations list specific impairments relevant to step three, some of which apply only to children. *Id.* § 416.924(d). A claimant bears the burden of proving that his or her impairment satisfies, or "meets," one of the listed impairments. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir.1995); *see also Hall ex rel. Lee v. Apfel*, 122 F. Supp. 2d 959, 964 (N.D. Ill. 2000) (child's claim). Once a claimant makes such a showing, an irrebuttable presumption of disability arises and benefits must be awarded. *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)).

---

[4]For a history of these regulations, see *Molina v. Barnhart,* No. 00-CIV-9522(DC), 2002 WL 377529 (S.D.N.Y. March 11, 2002).

To "meet" a listed impairment, a child must demonstrate both "A" and "B" criteria. *See* 20 C.F.R. pt. 404, subpt. P, app. 1. "A" criteria are medical findings and "B" criteria "describe impairment-related functional limitations." *Id*. An impairment that shows some but not all of the criteria, no matter how severely, does not qualify. *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir.1995); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). If a child's impairments do not "meet" a listed impairment, they may still be medically or functionally equal in severity and duration to the medical criteria of a listed impairment. 20 C.F.R. § 416.926a(a). A child's impairments "equal" a listed impairment when the child demonstrates a "'marked' limitation[ ] in two domains of functioning or an 'extreme' limitation in one domain." *Id*.

Domain analysis is equivalent to analysis of the "A" and "B" criteria for listed impairments and focuses on "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). The regulations include six domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. *Id*. A "marked" limitation is one which "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). It "is 'more than moderate' but 'less than extreme.'" *Id.*

### D.     ALJ Findings

The ALJ applied the Commissioner's disability analysis described above and found at step one that A.C. was a school-age child when the application was filed and that he had not engaged in substantial gainful activity at any time relevant to this decision. (Tr. at 21.) At step two, the ALJ found that A.C.'s fetal alcohol syndrome and ADHD were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that A.C.'s combination of

impairments met or equaled one of the listings in the regulations. (Tr. at 21-29.) Therefore, the ALJ found that A.C. was not disabled. (Tr. at 30.)

### E. Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff's son, A.C., was treated at Bright Futures Pediatrics in Kalamazoo, Michigan, from 2002 through 2007. (Tr. at 225-42.) On December 19, 2007, it was noted that A.C. had been brought in because of a left foot injury that occurred when A.C. "ran and stomped on foot because he was mad." (Tr. at 236.)

In October 2003, A.C. was evaluated by Mark A. Sloane, D.O. (Tr. at 299-301.) Dr. Sloane noted that A.C. was an "alert, active, cooperative, and pleasant young man with a nice smile," but that A.C. "had increasing levels of hyperactivity and impulsivity as the visit progressed and he became more comfortable." (Tr. at 300.) Dr. Sloane concluded that A.C. "did qualify for sentinel physical findings of FASD and had enough dysfunction of memory, attention and behavioral systems to warrant a diagnosis of Fetal Alcohol Spectrum Disorder." (*Id.*) Dr. Sloane noted that he had adjusted A.C.'s prescription medicine and would continue to do so since A.C. was "enjoying excellent symptom coverage in the afternoon at school and with the piano teacher and gymnastics instructor in the evening, but is having difficulty in the early morning and late morning at school before his next dose is given at noon." (*Id.*)

A.C. also participated from 2003 through 2005 in Bronson and Kalamazoo Area Rehabilitative Services with the goal of improving his ability to pay attention in school. (Tr. at 279-98, 302-86, 400-48, 454-63.) In September 2003, it was noted that A.C.'s rehabilitative potential was given the highest rating of "good" because he "has the cognitive and physical ability

needed to meet long term goals recommended." (Tr. at 308.) On April 21, 2005, A.C. was discharged because he had "met all OT related goals" and "scored age level." (Tr. at 279.)

A.C. was also treated by Park Place Counseling & Associates, L.L.C., in 2005. (Tr. at 465-71.) In June 2005, it was noted that A.C. had "made considerable progress . . . [and that there were] less behavior demonstrated problems in the class room . . . [but that he] continues to demonstrate a need for hand coordination skills." (Tr. at 470.) It was also noted that A.C. "appears to show a desire to learn and with the necessary help, he could progress with the skills he needs." (*Id.*)

An occupational therapy evaluation was performed in 2005 when A.C. was in first grade. (Tr. at 246-49.) Testing did "not indicate any major dysfunction in sensory processing or motor skills"; in fact, A.C. was "functioning above average for children his age" in these areas. (Tr. at 249.) It was also noted that A.C. did have "difficulty with impulse control" and would interrupt or need "more than one verbal cue to follow directions." (*Id.*) However, "[t]he nature of the difficulties this therapist observed in [A.C.] appeared to be in his attending skills, which certainly is in line with his medical diagnosis of Fetal Alcohol Spectrum Disorder and Attention Deficit/Hyperactivity Disorder." (*Id.*) It was also noted that A.C. had "shown improvement" due to "recent medication management." (*Id.*) The evaluation concluded that A.C. did "not need occupational therapy services" and suggested "adjustments to his environment to help him better cope in school." (Tr. at 250.)

A Psychological and Neurometric Report was also conducted in 2005. (Tr. at 256-57.) It was noted that A.C.'s "abnormal QEEG does suggest some brain-related difficulties which is associated with both ADHD and learning disability." (Tr. at 257.) Therefore, A.C. was recommended for a "brief course of neurofeedback . . . and if positive indications are present, we will plan such a continuing course of intervention." (*Id.*)

9

An evaluation was conducted in 2005 to determine A.C.'s eligibility for special educational services. (Tr. at 260-61.) It was determined that A.C. "scored in the above average range in the verbal area[,] his score of 87 in the performance area fell within the low average range[,]. . . [and] [his] full scale score of 102 [] falls within the average range [which] is 90 to 110." (Tr. at 261.) Therefore, the evaluation concluded that A.C. "has the ability to do well in school." (*Id.*)

Achievement testing also conducted in 2005 showed that A.C.'s "basic skills (a combined measure of reading, writing, and mathematic skills) is in the high average range[,] [his] performance is very superior in reading, his performance is high average in mathematics, . . . his performance is average in writing[,] . . . [and] superior in factual knowledge." (Tr. at 263.)

A.C. was also tested for behavior dimensions in 2005. (Tr. at 264-75.) These tests concluded that A.C. ranked in the 67th percentile overall. (Tr. at 265.) A.C. scored lower than the standard score in the areas of oppositional defiant, conduct disorder, avoidance personality, generalized anxiety and major depressive episode, but scored above the standard score in the inattentive and hyperactive-impulsive categories. (Tr. at 271.)

The Center for Behavioral Pediatrics also treated A.C. for ADHD, FASD/ARND (Fetal Alcohol Spectrum Disorder/Alcohol-Related Neurodevelopmental Disorder) and RSPD (Regulatory-Sensory Processing Disorder) in 2006 and 2007. (Tr. at 243-45.) On November 10, 2006, it was noted that A.C. was making "continued progress/better attitude/ behavior improved/ still has typical FASD behaviors." (Tr. at 245.)

In September 2007, A.C. was evaluated by Anne G. Kantor, licensed psychologist for the Disability Determination Services ("DDS"). (Tr. at 476-82.) Ms. Kantor diagnosed A.C. with ADHD, a GAF of 60 and a "good" prognosis. (Tr. at 481.) Also in September 2007, William Schirado, Ph.D., completed a case analysis with domain evaluations. (Tr. at 485-97.) Dr. Schirado

10

found no limitation in acquiring and using information, based in part on the fact that A.C. "gets straight A's in school," less than marked limitation in attending and completing tasks, less than marked limitation in interacting and relating with others, no limitation in moving about and manipulating objects, and no limitation in caring for himself. (Tr. at 488-89.)

A.C. was also treated by Marwan S. Tabbara, M.D., at the Borgess Behavioral Services, DeLano Clinic, beginning in January 2008. (Tr. at 534-42.) In April 2008, it was noted that A.C.'s "ADHD symptoms are adequately controlled ," that his "behavior has also improved," he "is less defiant and more compliant," that there "has been no aggressive behavior either at home or at school," and that he was "tolerating these medications with no significant side effects." (Tr. at 538.)

In June 2008, it was noted that A.C. was "doing acceptably well [with] no significant ADHD symptoms or behavioral problem," that his "mood symptoms are better controlled taking [medication]," and that there "has been no major problem at home or school." (Tr. at 537.) However, in July 2008, it was noted that "two weeks ago" A.C. "urinated on his sister because she refused to leave his room" and that A.C. had been "more defiant, argumentative, and impulsive" over the past few weeks. (Tr. at 535.)

A medical interrogatory was completed, without examination, by Larry Kravitz, Psy.D., on December 24, 2008. (Tr. at 549-56.) Dr. Kravitz opined that none of A.C.'s impairments meet or equal a Listing. (Tr. at 553.) Dr. Kravitz found no limitations in acquiring and using information, less than marked limitation in attending and completing tasks, and less than marked limitation interacting and relating with others. (Tr. at 554.) He did not make any findings as to the remaining domains.

A.C. also participated in "Community Living and Support Training" with Children and Family Services from December 2008 through 2009. (Tr. at 573-96.) In December 2008, it was noted that A.C. "did a fantastic job playing with others and staying on task" and "did a wonderful job following directions." (Tr. at 592-93.) In January 2009, again A.C. "did great." (Tr. at 588.) In February 2009, A.C. "chose to interact appropriately with all peers and to follow directions at all times." (Tr. at 586.) However, at times A.C. "had some trouble following directions to keep on track." (Tr. at 576.)

Plaintiff indicated in the daily activity report that A.C. "interacts well" with friends his age and that he receives phone calls, socializes with other children in the neighborhood, and has occasional overnight visits with friends. (Tr. at 148.) Plaintiff also reported that A.C. gets along "very well" with his three siblings "the majority of the time." (*Id.*)

Plaintiff stated that A.C. plays video games and reads for 3 to 4 hours per day. (*Id.*) Plaintiff indicated that A.C. has set fires on three occasions, once when he was two years old and twice when he was ten years old. (*Id.*) Plaintiff also stated that A.C. steals sweet snack food, lies "all the time even when being watched" and "has to be told to do something a min[imum] of three times." (*Id.*)

With regard to adults, Plaintiff indicated that A.C. has "some problems with teachers and with extended family members during extended visits," that he can be "rude and disrespectful" to teachers, can has "inappropriate conversations and does not know when to 'shut up,'" which "often gets him in trouble." (*Id.*) Plaintiff also indicated that A.C. gets along with authority figures "very well, most of the time; with exception of mother." (Tr. at 187.)

Plaintiff stated that A.C. does not miss school regularly, nor has he been restricted from attending any classes. (Tr. at 149.) Plaintiff stated that A.C. does household chores such as keeping

12

his room clean and keeping toys in the playroom, but that he does them "half-assed" and always needs repeated instructions and constant supervision or he "gets into all kinds of things – especially things that don't belong to him." (*Id.*)

Plaintiff indicated that A.C.'s speech can be understood "all of the time" by people who know him as well as those who don't know him and that he "speaks (and reads) very well, and has for years – even at a younger age (since age three or so.)." (*Id.*) Plaintiff stated that A.C. is able to answer the phone, deliver messages, repeat stories (not necessarily truthfully), and is sometimes able to explain why he did something. (*Id.*)

Plaintiff also stated that A.C. is able to prepare food in a messy manner, is able to vacuum but does it sloppily, is able to write letters and set the table, shovel snow, and participate in gymnastics and piano lessons. (Tr. at 150.) Plaintiff reported that A.C. is able to use public transportation on a daily basis, read books, newspapers, and items on the computer, and shop. (Tr. at 152.) Plaintiff also indicated that A.C. is very competitive and is an "oppositional, know-it-all, trash talker, a definite follower" with a "lower than age appropriate maturity level, and smart mouth." (Tr. at 186.) Plaintiff reported that A.C. follows spoken instructions "maybe ½ the time." (*Id.*) Plaintiff also stated that A.C. "continues to exhibit major tantrums to include crying, screaming, jumping up and down, and throwing self on floor and kicking." (Tr. at 187.) Plaintiff further reported that A.C. inappropriately discusses sexual topics, has urinated on his siblings, walks through the house in only his underwear even when visitors are present, but that he has "no violent tendencies toward others unless provoked but does 'wolf up' at siblings or those he perceives to be weaker than himself, and can be extremely verbally abusive." (Tr. at 188.)

  **F.** **Analysis and Conclusions**

  **1.** **Legal Standards**

After review of the record, I suggest that the ALJ utilized the proper legal standard in her application of the Commissioner's child disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2.     **Substantial Evidence**

Plaintiff contends that substantial evidence fails to support the findings of the Commissioner. (Doc. 9.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff specifically contends that the ALJ offered limited analysis and ignored significant evidence when considering the domain concerned with attending and completing tasks (Doc. 9 at 13-14) and the domain of interacting and relating with others. (Doc. 9 at 14-16.) Plaintiff further contends that, had the ALJ properly considered the evidence, he would have found Plaintiff marked in both domains or extreme in one of these domains. (Doc. 9 at 16-17.)

"Functional equivalence is determined by 20 C.F.R. § 416.926a, which requires a 'marked' impairment in two 'domains' or an 'extreme' impairment in one domain." *Kelly v. Comm'r of Social Security,* 314 Fed. App'x 827, 829 (6th Cir. 2009) (quoting 20 C.F.R. § 416.926a(d)). An extreme limitation is defined as one that "interferes very seriously with [the] ability to independently initiate, sustain, or complete activities" and that is "more than marked." 20 C.F.R. § 416.926a(e)(3).

I suggest that the ALJ's findings that A.C. had a less than marked limitation in the two contested domains – attending and completing tasks and interacting and relating to others – are supported by substantial evidence. (Tr. at 25-26.)

### a. Attending and Completing Tasks

As noted and analyzed by the ALJ, the regulations provide examples of limited functioning in the attending and completing tasks domain. They include:

> (i) You are easily startled, distracted, or overreactive to sounds, sights, movements, or touch.
>
> (ii) You are slow to focus on, or fail to complete activities of interest to you, e.g., games or art projects.
>
> (iii) You repeatedly become sidetracked from your activities or you frequently interrupt others.
>
> (iv) You are easily frustrated and give up on tasks, including ones you are capable of completing.
>
> (v) You require extra supervision to keep you engaged in an activity.

20 C.F.R. § 416.926a(h)(3).

None of the physicians evaluating A.C. found him markedly limited in this domain. Dr. Schirado found a less than marked limitation in attending and completing tasks. (Tr. at 488.) Dr. Kravitz also found less than marked limitation in attending and completing tasks. (Tr. at 554.)

A.C. "scored in the above average range in the verbal area[,] his score of 87 in the performance area fell within the low average range[,] . . . [and his] full scale score of 102 [] falls within the average range, [which] is 90 to 110." (Tr. at 261.) Therefore, the evaluation concluded that A.C. "has the ability to do well in school." (*Id.*) Achievement testing also conducted in 2005 showed that A.C.'s "basic skills (a combined measure of reading, writing and mathematic skills) is in the high average range[,] [his] performance is very superior in reading, his performance is

high average in mathematics, . . . average in writing[,] ... [and] superior in factual knowledge." (Tr. at 263.) As to behavioral aspects, A.C. ranked in the 67th percentile overall. (Tr. at 265.) During support training in 2008-09, although A.C. "had some trouble following directions to keep on track (Tr. at 576), it was noted that A.C. "did a fantastic job playing with others and staying on task," "did a wonderful job following directions,""did great" and "chose to . . . follow directions at all times." (Tr. at 586, 588, 592-93.)

In addition, the ALJ's determination is supported by Plaintiff's own descriptions of A.C.'s ability to stay on task when doing things he desires to do. Plaintiff stated that A.C. plays video games and reads for 3 to 4 hours per day. (Tr. at 148.) Plaintiff also stated that A.C. is able to prepare food, vacuum, write letters, set the table, shovel snow, participate in gymnastics and piano lessons, use public transportation on a daily basis, read books, newspapers, and read items on the computer. (Tr. at 150, 152.)

I therefore suggest that substantial evidence supports the ALJ's findings that A.C. is less than markedly limited in the attending and completing tasks domain and that A.C. is not disabled.

    **b.**    **Interacting and Relating to Others**

As noted and analyzed by the ALJ, the regulations provide examples of limited functioning in the interacting and relating to others domain. They include:

    (i)    You do not reach out to be picked up and held by your caregiver.

    (ii)    You have no close friends, or your friends are all older or younger than you.

    (iii)    You avoid or withdraw from people you know, or you are overly anxious or fearful of meeting new people or trying new experiences.

    (iv)    You have difficulty playing games or sports with rules.

    (v)    You have difficulty communicating with others; e.g., in using verbal and non-verbal skills to express yourself, carrying a conversation, or in asking others for assistance.

      (vi)    You have difficulty speaking intelligibly or with adequate fluency.

20 C.F.R. § 416.926a(i)(3).

      Again, both of the physicians evaluating A.C. found him to less than markedly limited in this domain. Dr. Schirado found a less than marked limitation in interacting and relating with others. (Tr. at 488-89.) Dr. Kravitz also found a less than marked limitation in interacting and relating with others. (Tr. at 554.) During support training in 2008-09, it was noted that A.C. had the ability and "chose to interact appropriately with all peers." (Tr. at 592-93.) During the time spent with Borgess Behavioral Services in 2008, it was noted that A.C.'s "ADHD symptoms are adequately controlled," that his "behavior has also improved," he "is less defiant and more compliant," his "mood symptoms are better controlled taking [medication]," and that he was "tolerating these medications with no significant side effects." (Tr. at 537-38.)

      The ALJ's findings are also supported by reference to Plaintiff's own statements about A.C. Plaintiff indicated that A.C.'s speech can be understood "all of the time" by people who know him as well as those who don't know him and that he "speaks (and reads) very well, and has for years – even at a younger age (since age three or so.)." (Tr. at 149.) Plaintiff stated that A.C. is able to answer the phone, deliver messages, repeat stories, and is sometimes able to explain why he did something. (*Id.*) Plaintiff also indicated that A.C. "interacts well" with friends his age and that he receives phone calls, socializes with other children in the neighborhood and has occasional overnight visits with friends. (Tr. at 148.) Plaintiff reported that A.C. gets along "very well" with his three siblings "the majority of the time" and gets along with authority figures "very well, most of the time; with exception of mother." (Tr. at 148, 187.)

      I therefore suggest that substantial evidence supports the ALJ's findings that A.C. is less than markedly limited in the interacting and relating to others domain and that A.C. is not disabled.

17

### 3. Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.


## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                            s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗
                                                           CHARLES E. BINDER
Dated: August 23, 2011                       United States Magistrate Judge

**CERTIFICATION**

    I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  August 23, 2011                         By       s/Patricia T. Morris       
                                                                                          Law Clerk to Magistrate Judge Binder