UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORNA CARTWRIGHT, on behalf of A.C.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
                                      /

Case No. 10-cv-13954

HONORABLE STEPHEN J. MURPHY, III

**ORDER OVERRULING OBJECTIONS** (docket no. 18), **ADOPTING REPORT AND RECOMMENDATION** (docket no. 17), **GRANTING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT** (docket no. 15), **AND DENYING CARTWRIGHT'S MOTION FOR SUMMARY JUDGMENT** (docket no. 9)

The Social Security Administration denied disability benefits to A.C.,[1] the son of Lorna Cartwright, in a written decision issued by an administrative law judge ("ALJ") on February 10, 2010. Cartwright challenged this ruling by filing a lawsuit against the Commissioner of Social Security ("Commissioner") in this Court, pursuant to 42 U.S.C. § 405(g). The Court referred the matter to a magistrate judge for all pretrial proceedings, and the parties filed cross-motions for summary judgment. In a Report and Recommendation ("Report") issued on September 20, 2011, the magistrate judge recommended denying Cartwright's motion and granting the motion filed by the Commissioner of Social Security ("Commissioner").

Cartwright lodged two timely objections to the Report. She argues that the magistrate judge incorrectly affirmed the ALJ's findings that A.C. was not "markedly limited" in his ability to (1) attend and complete tasks; and (2) interact and relate with others. The Court finds that the ALJ's decision was supported by substantial, record evidence, and that the

---

[1] This Order uses the initials of Cartwright's child in compliance with Civil Rule 5.2(a)(3).

magistrate judge did not err in recommending its affirmance. Accordingly, the Court will overrule the objections, adopt the Report, deny Cartwright's motion, grant the Commissioner's motion, and dismiss the case.

## STANDARD OF REVIEW

Recommendations on dispositive motions by a magistrate judge are reviewed pursuant to Civil Rule 72(b). The district judge who referred the motion is only required to perform a de novo review of the magistrate judge's findings if the parties "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). In this case, Cartwright objected to two specific findings made by the magistrate judge. Those findings will be reviewed de novo by the Court.

In an application for disability benefits, the burden lies with the applicant to establish an entitlement to benefits. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court only reviews the ALJ's determination to see if it is supported by "substantial evidence" and based on the proper legal standards. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679 (6th Cir. 1989). This review gives great deference to the ALJ's conclusions. It is not the Court's role to displace the ALJ's judgment of the facts with its own view of the evidence unless the ALJ's view is completely unfounded. *See id.* ("We do not review the evidence *de novo*, make credibility determinations nor weigh the evidence.").

## BACKGROUND

I.  Relevant Medical History

A.C. was born in a drug treatment center in Sault St. Marie, Michigan in June of 1997. A.R. 299. His biological mother had a history of drug abuse, including alcohol abuse. A.R. 299. Cartwright adopted A.C. when he was fifteen months old. A.R. 299. In 2003, Dr.

Mark Sloane formally diagnosed A.C. with fetal alcohol spectrum disorder ("FASD") and attention deficit / hyperactivity disorder ("ADHD").  A.R. 300.  At that time, Dr. Sloane placed A.C. on medication, and both Dr. Sloane and Cartwright noted significant improvement in his behavior as a result of the treatment.  A.R. 300–01.  Dr. Sloane continued to report that A.C.'s symptoms were well-controlled with medication until 2007.  A.R. 243, 245, 417, 460–61.

In September 2007, A.C. was seen by a limited license psychologist, Anne Kantor, for a consultative evaluation.  At that time, Cartwright reported that A.C.'s behavioral symptoms were "constant talking, not following directions, having to have things repeated several times, and frequent outbursts."  A.R. 476.  Similar issues were reported by his teachers at school.  A.R. 476, 478.  But Cartwright also noted that A.C. was "very bright" and earned "straight As" in the fourth grade, and was "maturing a little bit" as he got older.  A.R. 476, 478.  Cartwright also described A.C. as a "compassionate child" who related well to both his adoptive siblings and to his friends at school.  A.R. 479.  This generally positive state of affairs held sway through the early months of 2008, as the notes from A.C.'s new treating physician, Dr. Marwan Tabbara, indicate.  A.R. 537–39.

A.C.'s behavioral problems worsened as 2008 progressed.  Cartwright reported to Dr. Tabbara that A.C. was "showing increased behavioral problem[s]" around this time,  and changes in his medication regimen did not initially lead to better results.  A.R. 534–35, 619–21.  A.C. also received "F's" in all of his fifth-grade classes, even though he was performing adequately on standardized tests.  A.R. 72.  The symptoms improved at the beginning of 2009 as Dr. Tabbara continued to adjust A.C.'s treatment regimen, and reports from a behavioral therapy program A.C. participated in at this time reported significantly improved behavior.  A.R. 573, 577–78, 592, 618.

3

Unfortunately, A.C. relapsed towards the end of 2009. A psychiatric hospital admitted him in December of 2009 after he showed increased aggression and violent conduct at both home and school, received two suspensions from school for aggressive behavior, and continued his poor performance in school. A.R. 642. The treatment notes from his hospitalization did observe that his comportment improved after his treating physicians made adjustments to his drug regimen. A.R. 640. At the disability benefits hearing, Cartwright testified that A.C. was "[s]ometimes . . . just all over the place," that she had difficulty "getting him to focus and sit down and be still," that A.C. had trouble staying organized and paying attention in class, that she had to ask him to perform a task several times before he would do it, and that he required persistent observation in order to complete certain tasks. A.R. 64, 66, 73–74.

II.   The ALJ's Decision

The ALJ evaluated A.C.'s petition under the SSA's three-step framework for adjudicating benefits claims by children. *See* 20 C.F.R. § 416.924(a). He found that (1) A.C. was not engaged in substantial gainful activity, and (2) that his ADHD and FASD were severe, medically determinable ailments. A.R. 21. The ALJ ultimately denied benefits because A.C. could not get past the third step in the SSA's framework, which requires an impairment or combination of impairments that meets, medically equals, or functionally equals a listed impairment. A.R. 21. The ALJ rejected the "meets" and "medically equals" arguments with little discussion, and Cartwright did not challenge these findings. A.R. 21.

The disputed portion of the ALJ's opinion is his determination that A.C.'s condition is not "functionally equivalent" to a listed impairment. To obtain disability benefits at this stage, a claimant must show either an "extreme" limitation in one of six "broad areas of

4

functioning," called "domains," or a "marked" limitation in two of the domains.[2]  20 C.F.R. § 416.926a(a); *but see Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 832 (6th Cir. 2009) ("[J]ust because a person has the limitations described does not mean the person has an extreme or even a marked impairment.").  The six domains the ALJ must consider are:

(1)  Acquiring and using information;

(2)  Attending and completing tasks;

(3)  Interacting and relating with others;

(4)  Moving about and manipulating objects;

(5)  Caring for [one's self]; and

(6)  Health and physical well-being.

20 C.F.R. 416.926a(b)(1)(i)–(vi).  The ALJ found that A.C. was neither extremely nor markedly limited in any of these domains, and therefore, did not qualify for benefits.  A.R. 23–29.  Cartwright's objections to the magistrate judge's approval of the ALJ's findings regarding the "attending and completing tasks" and "interacting and relating with others" domains are now ready for review by the Court.

## DISCUSSION

I.  "Attending and Completing Tasks"

The "attending and completing tasks" domain is a measure of the child's ability to focus on a task; to begin, carry through, and complete tasks at a certain speed; and to remain focused on an activity or task at a consistent level of performance.  20 C.F.R. § 416.926a(h).  The regulations give a broad, descriptive portrait of how this requirement is

---

[2] A "marked" limitation is one in which the impairment "interferes seriously with [one's] ability to independently initiate sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation is one that "interferes *very* seriously with [one's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3)(i) (emphasis added).

5

reflected in the behavior of school-aged children and adolescents. *See id.* §§ 416.926a(h)(2)(iii)–(iv). Children who are limited in this domain are easily startled or distracted, slow to focus on an activity, unable to complete activities they start, quickly frustrated by tasks even when they are capable of completing them, and dependent upon extra supervision to remain engaged in the activity. *Id.* § 416.926a(h)(3).

The ALJ primarily relied upon the evidence contained in a medical interrogatory completed by Dr. Larry Kravitz, a licensed psychologist. After reviewing much of the evidence summarized above by the Court, Dr. Kravitz concluded that A.C.'s concentration was "relatively intact" in a consultative psychological examination conducted in August 2007, and that on the whole, A.C. had "less than marked impairments . . . in attending and completing tasks." A.R. 551. The ALJ also looked to the records from A.C.'s time spent in the behavioral treatment program in late 2008 and early 2009, where the staff members supervising him claimed he "followed direct[ions] and required prompting from staff members only occasionally." A.R. 25, 572–99. The magistrate judge added to this evidence that despite A.C.'s recent academic troubles, Cartwright admitted he could stay on task for extended periods of time when playing video games or reading at home, and that he performed certain chores well on a regular basis. A.R. 148, 150, 152. He also pointed to A.C.'s unremarkable scores on standardized tests measuring behavior and intelligence.[3] A.R. 263, 265. Finally, he noted that no treating physician of A.C.'s found he was "markedly limited" in this domain, and at least one other doctor consulted to examine

---

[3] Cartwright argues that an IQ score, which measures cognitive ability, does not correlate with an ability to attend and complete tasks. While the Court agrees that the magistrate judge's invocation of these figures did little to bolster the conclusion drawn, it finds the error, if any, harmless in light of the overall evidence regarding functionality in this domain.

A.C.'s medical file in addition to Dr. Kravitz, Dr. William Schirado, made an explicit finding to the contrary. A.R. 488.

Cartwright argues that the ALJ and the magistrate judge did not explicitly consider the treatment history from A.C.'s treating physicians and improperly weighed the consultative physicians' opinions. Consultative physician opinions are generally given less weight than opinions provided by a treating physician. See 20 C.F.R. 416.927(d)(2). But neither Cartwright's evidence supporting the motion for summary judgment, nor her objections, point to anything in that treatment history that calls into question the consultative physicians' opinions. On the contrary, as the Commissioner argued in its summary judgment motion, the treating physician notes are consistent with the conclusion that A.C. had an "adequate" attention span. A.R. 542 (December, 2007 examination by Dr. Tabbara); see also Comm'r.'s Br. 14–15, ECF No. 15 (summarizing other notes from Dr. Tabbara's treatment records).

Cartwright also emphasizes A.C.'s poor grades in fifth and sixth grade as a sign of his "marked" limitation in this domain. Nonetheless, it was permissible for the ALJ to infer that the poor grades were not solely attributable to a "marked" limitation in this domain. The evidence supporting such a finding included the sudden shift of A.C. from a "straight A" student in fourth grade to a poor student and A.C.'s admitted ability to focus and complete certain activities, such as doing chores, reading, and playing video games. Because the ALJ's weighing of this evidence was not impermissible, the objection is overruled.

II. "Interacting and Relating to Others"

The "interacting and relating to others" domain measures the applicant's ability to "initiate and sustain emotional connections with others, develop and use the language of [the] community, cooperate with others, comply with rules, respond to criticism, and respect

7

and take care of the possessions of others." 20 C.F.R. § 416.926a(i). Signs of maturity in this domain for school-aged or adolescent children include an ability to develop friendships, work in group settings, seek the approval of adults other than their parents, understand the views of others, act appropriately depending on context and audience, and communicate effectively. *See id.* §§ 416.926a(i)(2)(iv)–(v). Limitations in this domain are manifested by difficulty forming friendships, withdrawal from acquaintances, a fear of meeting new people, problems with participating in activities with rules, and communication issues. *see id.* §§ 416.926a(i)(3)(ii)–(vi).

The ALJ found that while A.C. was the victim of bullying and had "somewhat unpredictable" interactions with his peers in the past, he was less than markedly limited in this domain. The primary evidence the ALJ relied upon were A.C.'s scores on the Global Assessment of Functioning ("GAF") diagnostic test and the notes from A.C.'s supervisors in behavioral therapy from late 2008 and early 2009. While acknowledging that the GAF was not infallible, the ALJ noted that A.C. achieved scores on the GAF suggesting only "moderate" difficulties in social function. A.R. 26, 481, 612. The ALJ also noted that in the behavioral therapy A.C. participated in beginning in the later months of 2008, A.C.'s supervisors found him to be "patient and respectful in his interactions with his peers as well as staff members," and that superiors had little difficulty correcting him when necessary. A.R. 26, 591–93. The ALJ did acknowledge that A.C.'s impairment in this area worsened in late 2009, when he was hospitalized, but appeared to discount this episode in light of his previously higher level of sociability and the stabilization of his behavior through medication. A.R. 26–27, 640.

The magistrate judge affirmed, and noted several additional pieces of evidence supporting the ALJ's finding. As was true in the "attending and completing tasks" domain,

Drs. Schirado and Kravitz found A.C. to be less than markedly limited in this domain. A.R. 488–89, 554. Cartwright's own observations also support the ALJ's determination. She reported in a Social Security questionnaire that A.C. was an effective communicator with all persons, and that "[he] speaks (& reads) very well, and has for years — even at a younger age."[4] A.R. 149. She also claimed that A.C. could, at times, be a "compassionate child," that he "make[s] friends very easy," and that he generally maintained good relationships with his siblings. A.R. 479. While he noted some troubles with bullies in the administrative hearing, A.C. implied that he got along well with other students. A.R. 42–43. Dr. Tabbara's treatment notes from early 2008 also indicate that to the extend A.C. showed aggressive, antisocial behavior, it was controlled to some degree by medication. A.R. 536–38.

Cartwright contends that the ALJ failed to appropriately weigh some of the more recent evidence of A.C.'s limitations in this domain, including his suspensions from school for fighting, the school's imposition of staggered release time from class for A.C. to avoid interaction with bullies, and a couple of highly dramatic acts of aggression in the home. Objections 5, ECF No. 18. But an explicit consideration of these facts does not alter the reality that there was substantial record evidence from which the ALJ could reasonably conclude that, despite some of A.C.'s difficulties interacting with others, his symptoms did not, on the whole, constitute a marked impairment. The record shows that while A.C.'s social skills were certainly diminished, and that his behavior was particularly bad in the immediate run-up to the ALJ hearing, he also had significant strengths within this domain, especially with regards to communicating, making friends, and cooperating with others.

---

[4] These strong communication skills are also apparent from the transcript of A.C.'s examination by the ALJ and his attorney. A.R. 38–60.

9

The ALJ and magistrate judge's choice to not give prominence to the more recent downswing in behavior likely reflects a determination that, as weighed against other evidence, it was insufficient to establish a marked or extreme limitation in this domain. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) (observing that "cherry picking" is, often, little more than a pejorative term for "weighing the evidence"). Therefore, the objection must be overruled.

## CONCLUSION AND ORDER

"No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989). The ALJ's failures to explicitly discuss certain evidence does not constitute grounds for undoing a decision supported by the record. Accordingly, the Court will adopt the magistrate judge's Report and affirm the ALJ.

**WHEREFORE**, it is hereby ordered that the objections (docket no. 18) are **OVERRULED** and the Report (docket no. 17) is **ADOPTED**.

**IT IS FURTHER ORDERED** that the Commissioner's motion for summary judgment (docket no. 15) is **GRANTED** and Cartwright's motion for summary judgment (docket no. 8) is **DENIED**.

**SO ORDERED**.

                                                s/Stephen J. Murphy, III
                                                STEPHEN J. MURPHY, III
                                                United States District Judge

Dated: October 19, 2011

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 19, 2011, by electronic and/or ordinary mail.

                                        Carol Cohron
                                        Case Manager

2:10-cv-13954-SJM-CEB Doc # 20 Filed 10/19/11 Pg 11 of 11 Pg ID 796